So call the next case. Case number 10-3021, People v. Marvin Ware. All right, the attorneys who are going to participate, please step up, state your name, and the party you represent. Good morning, your honors. My name is David Holland. I'm here on behalf of the appellants, Mr. Marvin Ware. My name is Brian Hodes. That's the state's attorney, Brian Hodes, on behalf of the people. Good. All right. We have about 30 minutes on this case. Please proceed. May it please the court, my client has never wavered from his assertion that he is actually innocent of the conviction that resulted in a sentence of life in prison. Thus, the stakes in this case are extremely high, but the relief that my client is seeking is minimal. This is, as the case law puts it, merely a motion for forensic testing. The bottom line in this case is that modern DNA testing could prove that the semen sample collected from this sexual assault did not originate from Marvin Ware. If that is true, it would severely undermine the state's theory of guilt, and it would, at a minimum, be materially relevant to his claim of actual innocence. The statute requires that identity be the central issue in the case. Here, we have a situation where the defendant resided, I mean, worked, was employed at the place where the offense occurred, and since everybody knows that he even said he worked that day, is identity an issue here? Identity is at issue. The state is essentially arguing that because my client and the complainant knew each other, because they were in the same location at the time of the alleged sexual assault, therefore identity is peripheral to the trial, but the concept of peripheral identity simply does not exist in the law. The Illinois Supreme Court, twice over in Johnson and in Shum, have rejected the underpinnings of that argument, that simply because a complainant and a defendant knew each other, therefore identity wasn't at issue. The state's interpretation of the identity prong would result in an absurd result. Essentially, the state is arguing that if you're wrongfully convicted by way of misidentification, then the statute would be available to you, but if you're wrongly convicted by way of false accusation, therefore you wouldn't have a means to test the scientific evidence that was used against you. That argument has been rejected twice over by the Illinois Supreme Court and many times over by... What's the underlying theme here? What is it that your client posits happened here? My client's defense was one of false accusation, and even the state at trial... To the extent that there was no assault, or to the extent that there was assault by someone else, or to the extent that there was no assault but there was relations with someone else? What is it supposedly happening? I think the defense's theory of the case is that the complainant should not be believed because her recitation of what happened is so unbelievable that it couldn't have happened. As to whether she had sex with somebody else, I think that's an open question. So the defense's theory is not one of misidentification because, as Justice House noted, there's no dispute that they knew each other. So as to whether she had sex with somebody else or she created it whole cloth, that's an open question, and I think that's exactly what the DNA testing goes to in this case because the state is contesting that the results of the DNA testing would not be materially relevant, but it absolutely would be materially relevant because the state's case at trial hinged entirely on the credibility of the complainant plus that corroboration of semen found in the underwear. But if the test results come out and show that that semen did not originate from Marvin Ware, I think it has two effects. The first is that it knocks out all of the physical evidence in this case. There's no confession. There's no eyewitnesses. There's no physical evidence. But even more than that, it leaves the credibility of the complainant severely impeached. It means that she lied on a critical factor in this case because she testified she had not had sex with anybody in the prior 72 hours, and she had not had sex while wearing that underwear. So in a case where the defense is false accusation, the credibility of the complainant is absolutely critical, and even the prosecutor at trial acknowledged that in his closing argument. He said, Your Honor, this case boils down to the credibility of the complainant plus, even though we don't have DNA evidence, semen was found. What's the significance of 72 hours? Is there some scientific significance to that line? I'm not certain if it's scientifically significant. I think the point being that if she had been wearing this underwear over the course of more than a day, I think the state was using that to shore up that it had to have been Marvin Ware's semen because this was the underwear that she was wearing. And I think it also goes to the fact that the testimony is that she went to the hospital wearing the same clothing. And so, therefore, if the scientist used this antibody test and found out that that is semen, then it had to have been Marvin Ware's. But if the testing is done and it shows that it is not Marvin Ware's, then it would, at a minimum, be materially relevant to this case. Was the DNA testing already done and it was found that there's nothing here except the DNA of the complaining witness? What would further testing accomplish, you know, since there's only one source of DNA test? You're correct, Justice House, that DNA testing was done and the DNA test, the result of the DNA test is that it's only the complainant's DNA was extracted. But, of course, the problem there is that the complainant is female and the preliminary test showed that this is semen. So there's an obvious disconnect there. And from the research that I've done, it appears that the evolution and advancement of DNA testing is perfectly suited for this sort of case where we're only able to pull out female DNA from where there absolutely should be male DNA. I mean, the advances in SDR testing speak directly to these sort of sexual assault cases where apparently the presence of female DNA masked or overwhelmed entirely a sample where there obviously has to be male DNA if this is indeed a semen sample. So I think the advancements in DNA technology support ordering testing. And I think this is exactly the sort of situation that the Illinois General Assembly contemplated in passing a statute that exists solely to help convicted defendants exonerate themselves. I'd also like to address there's a line of argument in the state's brief that this case should actually just be dismissed entirely on the procedural ground that I, as appellate counsel, noted that YSTR testing appears to be ideal for this case. And in my client's motion, he asked for STR testing. And in my briefing, I know that's a meritless argument because YSTR testing is simply a subset, a form of STR testing. But I do want to make a bigger picture point here today, is that my client is seeking DNA testing to determine who deposited that semen sample. My client doesn't have a stake in what form of testing is done. So if this court orders DNA testing and it goes to a laboratory and a scientist looks at this evidence and she thinks that she can get male DNA just by using an STR profiler kit, maybe we don't even have to use YSTR, then certainly my client doesn't have a problem with that. But I think it would be a sort of perverse result in this case, that because YSTR testing appears to be perfect for this case, that would also be the reason to procedurally default it. This sort of case is perfectly suited for DNA testing. If there are no further questions, I'd reserve my time. Isn't it your position, though, that the YSTR test is a new advancement that wasn't available before and that's why you're here, because it's perfectly suited for a situation where you find semen but you don't find the male donor? It's my understanding that both STR and YSTR testing became commercially available after the time of this trial. And certainly there's no dispute that STR testing was not done at this time, on the evidence in this case. So I would say this request satisfies both A1 and A2 of the statute, in that he's requesting testing that was not performed at the time of trial. And then alternatively... Well, testing was performed. That's correct.  Then my position would be that under A2, advances in technology clearly show that this is the sort of case where testing should be done. Was this argument about the YSTR form of STR made from the trial court? It was not. And my point in my brief regarding that is that there's no discussion at all about the merits of the actual testing. And there was no dispute from the state saying, oh, well, this isn't... there's no technology that would speak to this sort of situation, that science has not improved. There's no sort of arguments to that effect. And even the state before this court really doesn't dispute that. It's sort of widely accepted knowledge at this point that DNA technology has advanced to the point where it could get results in this case. I'll reserve the remainder of my time. Thank you. Thank you. Thank you, counsel. May it please the Court, Brian Hodes on behalf of the people of the State of Illinois. In this case, the defendant requested STR testing in his motion, and that testing had, in fact, already been performed. The trial court, consequently, with evidence of that, denied the request for the motion. That's what was in front of the trial court. It's only now that we are hearing about YSTR testing. That wasn't before the trial court. The fundamental rules of appellate procedure and the way this entire statute, 116, is set up, is so that the trial court can evaluate what's in front of it, not so that something can get tossed in on appeal as a new basis for testing. These DNA tests shouldn't all be lumped together. Well, let me ask you something. Suppose you're, let me say for the sake of argument that your position is correct and you should have asked for YSTR. Wouldn't he be able to just go right back before the same trial court and file another petition and say, I want YSTR, something that's not available? But what are we accomplishing? Absolutely. What are we accomplishing by raising that bar? I don't know. He could file it. He could have filed it yesterday and we haven't heard yet. All right. And the other thing is this man is doing life. Am I correct? Yes. What is the cost of this test? What is the cost? I don't know. And I don't, that wasn't consideration. A couple hundred bucks? I have no idea what it costs to do any of these tests. And I don't know how, if he properly requested YSTR testing, if we would object, how we would respond to it. I can't say that because they didn't make the request and no record was developed before the trial court. And these tests do differ in this court's decision. I think we discussed this before. Let's go back. State's attorney is to do justice. Yes. That's what we're going to do. And do justice means convicting the guilty and making sure the innocent are not convicted, right? Right. These tests were, if, I can't speak for whoever would make that decision below, but if they requested YSTR testing and we thought it was a legitimate request, I don't know if we would, you know, what the result would be. If we would raise an objection to it, if the trial court would grant it or not. What I do know is that they didn't request it. We don't have a properly developed record and that a motion could be filed yesterday to ask for it without this procedure. Well, is YSTR now considered a subset of STR testing in the way they do things nowadays? No. It's a separate thing, is my understanding, at least for legal purposes. The case that we discussed, Barker, in this court, made a fairly complicated analysis. It's a very on-point case, I believe. In Barker, the defendant requested three specific types of testing. One of them included the type of testing that the defendant requested here. And then on his test request was denied. On appeal, he requested five tests, the three plus two and more, two new ones. YSTR testing, the one that counsel is advocating here, and something called MDNA testing. The appellate court rule discussed the differences and distinctions between these kinds of tests. In other words, it didn't just lump them all together as, quote, unquote, modern DNA testing. And found that because the issue on appeal was what was in the motion, the three times it requested there, the other two that were tossed in on appeal weren't properly before the court and the matter was waived. The effect of it was, as your Honor says, that the defendant could make those requests. It wasn't like a post-conviction petition where there was any preclusive effect by the appellate court saying we can't address this because it's waived or forfeit or something. Or because it's really, because it's being waived for the first time before that. It said according to the statute that that's how it's supposed to happen. And I don't know how it would happen below. I don't have the authority to even go there, really. And that would be up to the judge. And it would also be up to us to figure out how we would respond to such a request. But no such request was before us. And it's a different type of testing. And it would be different considerations that would come into play. So would the State object or have any problem with the appellate court remanding the matter to the circuit court, giving the defendant the opportunity to amend his request? I think our preferred result is that the court rule on the motion that was before it and affirm the trial court's ruling. And the defendant has the opportunity to file that motion before this court could probably even complete the remand. I mean, he could file it right now. So it seems to me that that's actually also the most expeditious course if the defendant really wants to remand it, really wants that kind of testing or some other kind of testing that we haven't discussed here today that may have emerged that's modern DNA testing. It seems like this case is caught in like a procedural whirlpool. And we have to find a way out of it because it doesn't seem like anybody's really objecting to at least a request being made to the trial court that this test be made. And that's where it should be made, in the trial court, because that's what the statute provides. And the statute contemplates the evolution of science. It contemplates that the trial court will then do its diligence and determine whether or not this requested form of testing could indeed meet the requirements set forth. I don't know if it's really to break the law jammed. I don't think it has to be broken by this court or the whirlpool of work acts. The defendant simply has to file a piece of paper in the trial court. Do you agree that in any case where a defendant pleads not guilty that identity is always an issue? No, I don't. Is it an issue in this case? I think that the record in this case, and that's what it says you focus on, is whether identity is a central issue, I believe, not just an issue. But the record suggests that it wasn't because the primary argument made at trial, and again the statute focuses on what happened at trial, was. Well, he said I didn't do it, my client didn't do it. Not really. He said that there was no rape, and he went right after her. Well, he said it's not rape. It was physically impossible for there to have been a rape. Well, if we follow your argument, that means in order for identity to be a central issue in a case where the victim knows the alleged perpetrator, in order to make identity an issue, the defendant would have to take the stand, basically, to testify and do it. It wasn't me. In order for identity to be an issue. Is that what you're saying?  I'm sorry, I didn't mean to cut you off. How else could this defendant have said it wasn't me and get DNA testing if he didn't have to take the stand to say that? I think it's just, I'm saying look at the entire trial record. I don't think he had to take the stand to say that. Well, here's what I'm saying. Granted, he worked at the store. Granted, she identified him. But when you think about how DNA and all these cases have evolved over time, sometimes identity can be an issue. I remember the beauty shop rape case that came up and had eight, ten ladies. I swear, that's the guy, that's the guy, that's the guy. And one day they did retesting on the DNA and they found the actual perpetrator. He actually did look like the perpetrator.  Marvin, Marvin, Marvin did it. But Marvin said, I didn't do it. And your victim may be telling the truth and think it's Marvin, but perhaps. He didn't make that argument, though. He said he didn't do it. His lawyer said, my client didn't do it. It didn't happen the way she said it happened. He said, I was mocking him. I don't know what happened. He didn't testify. Are you saying he has to testify? That's my point. No, but I'm saying that the way, I mean, it's a tough call. There isn't a clear line exactly what is central to a case. But my review of the record, the trial record, was that their argument was there was all this evidence. And it didn't prove that she was raped, period. There was no rape by anyone. And that that brought it outside of, that brought identity outside of the necessary sinfulness. So you can have an acquaintance rape defense, which I guess is kind of what you're talking about. An allegation. Right, a false allegation. But it wasn't, you know, like, why are you accusing him? It was, you weren't rape, period. That was the argument. And I'm saying that didn't make identity an issue. It's relatively kind of an open question. Well, then, let's put it another way. Let's look at it from another point of view. Let's presume that the victim was not making a false allegation, and she basically was telling the truth. Something happened to her. She was. And this defendant says, I didn't do it. Maybe she's telling the truth. Something did happen to her. And we just want to, and the defendant says, I want to see the results of this DNA testing. So identity is an issue in that sense, isn't it? I'm just talking about the way the statute is structured. In that sense, because he's been found guilty, sure, his identity is an issue. But the statute says, was identity an issue at the trial? And it's our position that identity was not a central enough issue. It doesn't have to be the issue, the only issue. It has to be an issue, a central issue, I guess was the phrase. Not necessarily at the very center. Well, if somebody says. That's a tough call. If somebody says something happened, and the defendant says, I didn't do it, isn't, you know, there may be overwhelming evidence on identification issue. But isn't it true that it is an issue? If that's, my reading of the trial record was, I mean, yes, the statement, I didn't do it, certainly says it wasn't me. I mean, the lawyer argued that. But he didn't really. What he argued was there was no rape. And that her testimony shouldn't be believed because it was unrealistic. It was inconsistent with rape. And, you know, she suffered no rape, period, not that his client didn't do it. That would work if there was an argument there was no rape and there's a consent defense. But here there's an argument there's no rape and I didn't do anything, I didn't touch her. Then that would make it a little bit different. It would. But the only argument really was that there was no rape. So it was kind of hard to say exactly where they were going with the defendant's position vis-a-vis whether or not someone else did it or whether, and that makes it a hard call on that particular issue. Because it's supposed to focus on the trial record. And the trial record suggests, doesn't suggest, I mean, it makes it pretty clear that the identity was not really the issue, the salient issue that was being raised by the defense. The defense was saying there was no rape and she's lying about it. And all this stuff shows that she's not credible. And maybe that was how they were going to get her credibility. But that's what the statute says. Can you point to another case involving sexual assault where a defendant said not guilty, and not putting up consent, but saying not guilty, and the court denying the DNA testing? No. Bracketing aside, all the ones where they make, like Barker, where they, where we're talking, I assume you don't mean a case like Barker where the request, testing request, it wasn't the right testing. Right. Because that's, those, that obviously would fall. Right. Aside from that one. Aside from cases like that. Because that's what's in front of us for, is the motion. And the motion doesn't request it. Right, but getting back to the other part. But you want to get back to the identity thing. We cited, I think, three cases to discuss this where the court found that identity wasn't an issue. Wasn't the issue at trial. One case, one because of the defendant's proximity to the victim. Here's the other part about it. This gentleman is doing life. Yes. Doing life. What's wrong with testing to make sure? Nothing is wrong with testing to make sure. Assuming it's the testing, and the testing is the correct testing, and it meets the statute's requirements. If the court has no further questions, I would ask that this court simply affirm the, wait, there were a couple of things I wanted to comment on. I'm sorry. I got ahead of myself. Because they weren't raised, but they do need to be discussed. Which are the allegations of the, if the court does remand it, if the court decides to remand it so that he can amend this, although I would say that the court should just affirm the dismissal, and he can file the motion yesterday or today, and that's faster than any remand telling him, now you can do this. If the court does remand it, there's absolutely no reason to assign him new counsel, and there's even less reason to assign a new judge. There's no support for either of those positions. The defendant wasn't entitled to counsel in the first place, and counsel did, you know, advocated on behalf of what the defendant wanted. And in terms of the judge, there's absolutely no evidence that the judge was biased or did anything unheading towards opinion or predilection against the defendant in this case, and it would be wrong to reassign it to a different judge. In summary, the people respectfully request that this court affirm the dismissal of the defendant's petition, or motion, I should say, forecasting. Other reasons I've discussed, as well as those set forth in our brief. Thank you, Your Honor. Thank you, Mr. Otis. Justice House, I called a scientist at Orchard Cellmark to run this case by her, and she told me for about $1,000 you can do DNA testing. Of course, the cost of incarcerating my client for life is many hundreds of thousands of dollars, but more importantly, it's the loss of my client's freedom. The state is intent on having this testing request dismissed on procedural grounds. In fact, my opposing counsel today appears to be admitting that if YSTR testing is asked for, they might not oppose it. I don't know if he's speaking for the state's jury's office there. Right. I guess his position is we'll find out one way or another. We'll find out when it goes down the line. To pick up on his theme, though, since it appears from the record that STR testing was done, why haven't you gone back while this appeal was pending and just filed a new request like counsel suggested? Why haven't you just gone back in front of this judge and said, you know, just to cross our T's and dot our I's, we got this new test, YSTR, we didn't give you a chance to talk to you about this, we didn't get a chance to talk to you about this yet, it's a new thing, could you order this test? And then you're there. And then we find out exactly what their position is. Twofold, Justice Palmer. My understanding is that STR testing hasn't been done in this case. But to get to your second point is that the reason my client hasn't put in another request for YSTR testing is that the first time around it totally backfired on him. I've got to say, my client put in a request in 2008. This case has been going on for four years. My client has been seeking DNA testing. And the judge simply dismissed it. And then it came on appeal and my client filed another request, this time making it more specific, saying I need STR testing. No, you're right. I misspoke. The briefing says that the report shows that PCR testing was done. Go ahead. And so what happened there is that after my client put in another request to make it more specific, the state's attorney on appeal got wind of this and then used it against my client. On appeal, a couple years ago, the briefing before this court was pretty much identical. The state got wind of it and then actually asked this court to dismiss the case without addressing the merits, pretty much making the same argument my opposing counsel is making now. And I think ultimately what the state is arguing here is really violating an important principle of the forensic testing statute, and that is that this is a rare statute where the Illinois General Assembly has passed a law that its sole reason for existence is to help exonerated defendants. And it's been amended twice over in the last ten years to actually make it easier to obtain DNA testing. So for the state to ask this court to construe the statute so narrowly as to make it difficult to obtain testing, I think would be unfair to the intent of the legislature. And as I noted, the state... So you think that if you went back to... You think what would happen again is if you went back to the trial court while this appeal was pending and you went to the trial court and said, we want this test, then they say, wait a minute, there's an appeal pending. They're either going to... That's correct, Justice Palmer. They're either going to say appeal is pending, or if this appeal is complete, what they're going to say is res judicata. They're going to say, oh, look, the appellate court denied it, and now he's back again. He's asking for why it's fair testing. And I think my client has a really legitimate concern in this case, that this judge has looked at this DNA testing request twice over now and hasn't really addressed the merits of the technology and the advancement in technology, and hasn't addressed the merits of... Because I think we can agree that this record that the state's attorney is saying should have been developed in front of the trial judge hasn't been developed with regard to this new form of testing. I'm not saying that in a judgmental way in terms of what value it has, but I think what they're saying is that the trial... Your brief sets out in excellent detail the underpinnings of this YSDR testing that you want to do, and I think what they're saying is that it's unfair to say that this particular judge hasn't bought into this because it wasn't presented to her. So I guess that dovetails into the next question, and that is that it's quite a step to ask us to send this back to a different judge. Why would we do that if she hasn't been faced with this data that you've sent to us? I would agree with your characterization, Justice Palmer, and I would say that if this court remains with specific directions saying this evidence has to be tested, then my client doesn't have a problem with sending it back to the same judge. And in terms of the record not being developed in the way it is before this court, I think there's a principle of law that recurs in these cases that I think speaks directly to this case, and that is that the trial court is not in a better position to review the merits of these motions. And I think in this case, actually, I think this court is in a better position because the record is full in terms of the transcripts. The issue has been fully briefed. There's not testimony that needs to be taken in this case. And so I think this case is ripe for an order for DNA testing, and I wouldn't, frankly, I wouldn't trust, based on the procedural posture of this case, I wouldn't trust it to simply just be dismissed entirely and then hope that my client, who is incarcerated, who is indigent and who is pro se, to leave it to him to have to refile something and then hope that the state doesn't argue res judicata the second time, the third time around And Justice House, you noted that there's a principle in the law that the state's interest in a criminal prosecution is not that it shall win a case, but that justice shall be done. And I think this is a case where the state of Illinois should be seeking justice to ensure that one of its citizens is not wrongfully incarcerated for the remainder of his life. Thank you, Your Honors. All right. This case will be taken under advisement. Justice O'Brien will participate in the decision. I enjoyed the presentation. Thank you very much. Thank you, counsel.